Sunbeam Coal Corporation *v.* Department of Environmental Resources.

Willowbrook Mining Co. *v.* Department of Environmental Resources.

Grant R. Wright Coal Co. *v.* Department of Environmental Resources.

Argued April 3, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Leo M. Stepanian,* with him *Brydon & Stepanian,*
for appellants.

*K. W. James Rochow,* Assistant Attorney General,
with him *Barbara H. Brandon,* Assistant Attorney
General, for appellee.

OPINION BY JUDGE WILKINSON, May 4, 1973:
These appeals are taken from an order of the En-
vironmental Hearing Board quashing appellants' ap-

peals as prematurely filed. Upon review, we find that the Board's order must be affirmed.

Appellants, Grant R. Wright Coal Co. (Wright) and Willowbrook Mining Co. (Willowbrook), each received written notices from the Department of Environmental Resources (Department) that they were violating certain provisions of the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P. L. 1198, as amended by the Act of November 30, 1971, P. L. 554, 52 P.S. §1396.1, et seq. Wright and Willowbrook appealed this notice of violation to the Environmental Hearing Board, where the Department's motions to quash were granted.

Appellant, Sunbeam Coal Corporation (Sunbeam), made application to conduct mining operations within 300 feet of an occupied dwelling. The Department, by letter, refused to hold a hearing, and took no other action on the application on the basis that the owner of the dwelling had refused to permit the mining. This determination was appealed to the Enviromental Hearing Board. Shortly after that appeal was filed, the Department informed Sunbeam by letter that a hearing would be held on the application despite the lack of permission from the owner of the dwelling. Thereupon the Department filed a motion to quash Sunbeam's appeal which was granted by the Board.

As to appellants Wright and Willowbrook, the order quashing the appeals must be affirmed if it is determined that the notices of violations were not appealable orders of the Department.

The instant notices were sent pursuant to Section 4.3 of the Surface Mining Conservation and Reclamation Act, 52 P.S. §1396.4c: "Any mine conservation inspector shall have the right to enter upon and inspect all surface mining operations for the purpose of determining conditions of health or safety and for compliance with the provisions of this act, and all rules and

regulations promulgated pursuant thereto. Should an operator fail to comply with the requirements of this act, or any rules or regulations promulgated pursuant thereto, the mine conservation inspector shall report the matter to the secretary [of Environmental Resources] who shall immediately notify the operator by registered mail of such failure. Unless the operator complies with the act, and such rules and regulations, within thirty (30) days from the receipt of such notice, the secretary may, after hearing and final determination, suspend the surface mining operator's license of the operator and issue a cease and desist order requiring the operator to immediately cease surface mining within this Commonwealth until such time as it is determined by the secretary that the operator is in full compliance. . . ." Following the required notification, the Secretary did not suspend the license or issue a cease and desist order.

Initially, the notices could not be considered "adjudications" within the meaning of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.1, et seq., so as to require a hearing and permit an appeal in accordance with that act. "Adjudication" is defined in Section 2 of the Administrative Agency Law, 71 P.S. §1710.2: "(a) 'Adjudication' means any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles, pardons or releases from mental institutions."

Nor can the notices be considered "actions" of the Department under Section 1921-A of the Administrative Code, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §510.21, which provides: "(c) Anything in any

law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified." "Action" has been defined in Title 25, Part I, Subpart A, Chapter 21, §21.2, of the Department Regulations: "Action—Any order, decree, decision, determination or ruling by the department or local agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any person, including, but not limited to, denials, modifications suspensions and revocations of permits, licenses and registrations; orders to cease the operation of an establishment or facility; orders to correct conditions endangering waters of the Commonwealth; and orders to construct sewers and treatments facilities; and orders to abate air pollution; and appeals from and complaints for the assessment of civil penalties."

Clearly, therefore, the notices here were not adjudications or actions which require hearings and engender review by administrative boards or courts of record. The supplemental brief filed by appellants indicates that the Department refused to renew their mining permits for 1973, based in part upon the violations alleged in the notices now before us. This action of the Department, however, is not the basis of these appeals.

The order quashing appellant Sunbeam's appeal must likewise be affirmed, although on different grounds. The pertinent statutory provision, Section 4.2(c) of the Surface Mining Conservation and Reclamation Act, 52 P.S. §1396.4b(c), provides: "From the effective date of this act, as amended hereby, no opera-

tor shall open any pit for surface mining operations (other than borrow pits for highway construction purposes) . . . within three hundred feet of any occupied dwelling house, unless released by the owner thereof. . . . The secretary may, after notice and public hearing, grant operators exceptions to the distance requirements herein established where he is satisfied that special circumstances warrant such exceptions and that the interest of the public and landowners affected thereby will be adequately protected."

It is apparent that the original letter of the Department denying Sunbeam a hearing on its application to mine within 300 feet of an occupied dwelling house was a decision affecting the possible use of Sunbeam's property, and thus must be considered an action of the Department as defined by the regulation previously quoted. Nevertheless, when the Department subsequently granted a hearing to Sunbeam on this matter, the pending appeal to the Board became moot. The Department's motion to quash was properly granted.

Accordingly, we enter the following

ORDER

Now, May 4, 1973, the order of the Environmental Hearing Board, quashing the above appeals, is affirmed.

———

CONCURRING OPINION BY JUDGE KRAMER:

I agree with the majority's analysis of the law and the results under the facts of this case. However, I believe I must register a caveat for the reason that I am concerned that the Department of Environmental Resources (DER) may use this case as precedent for imposing future hardships on coal operators.

It appears to me that the modus operandi of DER is to utilize the notice sent to the coal operator as a *fait accompli* in the establishment of a basis for the refusal of the issuance of a future license or the reissuance of an annual license.

I agree that the notice, in and of itself, is not an appealable adjudication. However, when DER uses that notice, which the appellant has no way to test or contest, as the basis for its refusal of a subsequent license, it is of little solace to a small coal operator to advise him that he can thereafter take an appeal on the license issue. There is no provision in the statute, nor in DER's rules and regulations for an *automatic* supersedeas in such cases under which the coal operator could continue his operation while the reason for the refusal of the issuance of the license is finally resolved. Even if a supersedeas is granted upon petition, that takes several days, under the best of circumstances. If neither the statute nor DER's rules and regulations provide for a continuance of a coal operator's business, under such circumstances, then I am concerned that to deprive a coal operator of a means to clear his operation, or to prove that the notice has no valid foundation prior to the refusal of the license, and thereby deprive him of his business (even for a few days, which could be disastrous to the coal operator, whether small or large) may be a taking of his property without due process of law. Even if DER's approach to this problem cannot be deemed to be violative of constitutional rights, such governmental practice from my point of view is unfair, and should not be condoned. Whenever possible, a citizen should be afforded the opportunity to protect his property rights before a governmental deprivation.