Edgewood School District, Appellant, *v.* State Board of Education of the Commonwealth of Pennsylvania, Appellee.

East Allegheny School District, Appellant, *v.* State Board of Education of the Commonwealth of Pennsylvania, Appellee.

Turtle Creek Area School District, Appellant, *v.* State Board of Education of the Commonwealth of Pennsylvania, Appellee.

Churchill Area School District, Appellant, *v.* State Board of Education of the Commonwealth of Pennsylvania, Appellee.

Argued December 3, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Carl W. Brueck, Jr.*, Solicitor, for appellant, Edgewood School District.

*William M. Wycoff*, Solicitor, for appellant, East Allegheny School District.

*James C. Evans*, with him *M. E. Evashwick*, for Turtle Creek School District.

*J. Robert Maxwell*, Solicitor, for appellant, Churchill Area School District.

*Burton D. Morris*, Deputy Attorney General, with him *Lawrence Silver*, Deputy Attorney General, and *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 20, 1975:

On June 9, 1971, a number of plaintiffs, as individuals, parents and guardians of school aged children, and as class representatives of those similarly situated, filed a civil rights action in the United States District Court for the Western District of Pennsylvania.[1] The complaint named as defendants the Commonwealth of Pennsylvania, the State Board of Education (State Board), and various state and local administrative bodies and certain of their individual members.

Plaintiffs alleged the violation of constitutional rights resulting from the adoption of a school district reorganization plan which merged the school districts of Rankin, Braddock and North Braddock and formed a new school district named the General Braddock School District. It was alleged that this plan and resulting new school district maximized segregation and inequality.

Following a trial, District Court Judge GERALD J. WEBER found that the creation of the General Braddock School District violated the constitutional rights of the named and class plaintiffs. On May 15, 1973, Judge WEBER signed an order directing the State Board to prepare and submit to the District Court a comprehensive plan of school desegregation for the central eastern area of Allegheny County to remedy the constitutional violations which he had found to exist.

A portion of this May 15, 1973 order directed the State Board to prepare a plan in accord with the following guideline: "[T]he plan shall alter the boundary lines of the General Braddock Area School District and, as appropriate, of adjacent and/or near-by school districts."[2]

---

1. The case was docketed as *Hoots, et al. v. Commonwealth of Pennsylvania, et al.,* Civil Action No. 71-538.

2. We refrain from expressing any opinion as to whether or not the United States District Court for the Western District of Pennsylvania has authority to order reorganization of school districts by altering boundary lines of school districts, some of which

In response to the District Court's order of May 15, 1973, the State Board convened a series of hearings for the purpose of obtaining views and information to aid it in the formulation of a plan to submit to the District Court. Certain school districts, not parties to the federal suit, were given notice of and invited to participate in these hearings conducted by the State Board.

On October 14, 1973, the State Board submitted a plan of school desegregation to the District Court in compliance with its order of May 15, 1973.[3] Copies of this submitted plan were sent to all school districts that could be affected by this plan. The school districts of Edgewood, East Allegheny, Turtle Creek and Churchill Area filed timely appeals to this Court challenging the legality of the plan. The State Board filed motions to quash these appeals, to which answers were filed, and we, sua sponte, consolidated these four appeals and directed argument on the motions to quash prior to argument on the merits of the appeals.

The State Board's motions to quash are based on the contention that the reorganization plan of school desegregation submitted to the District Court, in compliance with that Court's May 15, 1973 order, is not appealable since it was not an adjudication or final order and was merely a recommendation based upon a proceeding before a court. We agree with this contention.

---

are nonparties to the suit in which the order is entered. However, on August 15, 1974, Judge WEBER did entertain oral argument on the question of the applicability of *Milliken v. Bradley*, 418 U. S. 717, 94 S. Ct. 3112, 41 L. Ed. 2d 1069 (1974). Although Judge WEBER has not yet ruled on the applicability of *Milliken*, it is evident that a determination that *Milliken* did apply here would likely make these appeals moot. However, since the motions to quash these appeals have been argued, we will rule upon them without awaiting further action by the District Court.

3. The State Board set July 1, 1974 as the date upon which its plan, if adopted by the District Court, would become operative.

The submitted plan could not be considered an "adjudication" within the meaning of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, *as amended*, 71 P.S. §1710.1 et seq., so as to permit an appeal in accordance with that act. "Adjudication" is defined in Section 2 of the Administrative Agency Law, 71 P.S. §1710.2 (Supp. 1974-1975): "(a) 'Adjudication' means any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles, pardons or releases from mental institutions."

Here the plan submitted by the State Board was (1) only a recommendation to the District Court, (2) not a final determination by the State Board since the power to decide and order was, if it did exist, in the District Court, and (3) only formulated and presented "based upon a proceeding before a court"; namely, the court order of May 15, 1973. It was not an appealable action. *See LaCamera v. Board of Probation and Parole*, 13 Pa. Commonwealth Ct. 85, 317 A 2d 925 (1974) ; *Sunbeam Coal Corporation v. Department of Environmental Resources*, 8 Pa. Commonwealth Ct. 622, 304 A. 2d 169 (1973) ; *McKinley v. State Board of Funeral Directors*, 5 Pa. Commonwealth Ct. 42, 288 A. 2d 840 (1972) ; *Fricchione v. Department of Education*, 4 Pa. Commonwealth Ct. 288, 287 A. 2d 442 (1972) ; *Manheim Township School District v. State Board of Education*, 1 Pa. Commonwealth Ct. 627, 276 A. 2d 561 (1971).

We sense from oral argument that the appealing school districts do not disagree with this analysis but harbor an understandable concern that the State Board, contrary to its contention here, will subsequently en-

deavor to enforce compliance with its reorganization plan and, as a corollary thereto, assert in the future that school districts affected by the plan which failed to appeal the plan could not oppose enforcement. This concern is increased by the State Board's reference to the plan as a "decision" of the State Board and by the "plan for implementation" which is the concluding portion of the submitted plan and wherein the State Board uses such language as "directs" that the new reorganized school districts become effective July 1, 1974 and that the Executive Director of Intermediate Unit 3, on or before January 15, 1974, call a convention of the incumbent school directors of each proposed unit for the purpose of selecting an interim operating committee. We deem these pronouncements to have been intended by the State Board only if its submitted plan of October 14, 1973 were accepted and ordered by the District Court. No such action has been forthcoming from the District Court, and all the dates mentioned in the submitted plan have passed without any attempt on the State Board's part to obtain compliance with these implementation provisions of the submitted plan. The absence of any attempts to enforce the plan fortifies our conclusion that the plan submitted by the State Board on October 14, 1973 was only a recommendation to the District Court and has never become binding and has not yet affected the appealing school districts.

The State Board concedes in its brief filed here that it is powerless and without statutory or any other legal authorization to order school district reorganization within this Commonwealth. The State Board admits that its only justification for holding hearings and formulating a school district reorganization plan is the May 15, 1973 order of the District Court.

Although the correctness of the State Board's concession is not before us and our expression of opinion thereon would be nothing more than obiter dictum, we

do hold the view that the State Board has not yet issued orders or made any decision, determination, or ruling which changes or affects local school districts' boundary lines.

Accordingly, the State Board's plan submitted to the District Court on October 14, 1973 was not an adjudication, final order, or any decision from which the school districts here could appeal to this Court.

For the foregoing reasons, we enter the following

## ORDER

Now, this 20th day of January, 1975, the motions of the State Board of Education to quash the above-captioned appeals are hereby granted. The appeals are quashed.